UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVARISTO RAMOS ESPINA,

     Petitioner,

    v.                        Case No.:  2:26-cv-00028-SPC-DNF

DAVID HARDIN *et al.*,

     Respondents,

                              /

## OPINION AND ORDER

Before the Court are petitioner Evaristo Ramos Espina's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 6), and Ramos Espina's reply (Doc. 7).  For the below reasons, the Court grants the petition.

### A. Background

Ramos Espina is a native of Cuba.  He entered the United States without inspection around 1968 and was later granted lawful permanent resident status.  In 2002, Ramos Espina was convicted of a drug offense and sentence to 240 months imprisonment.  On January 23, 2008, an immigration judge ordered Ramos Espina removed, and he was transferred to the custody of Immigration and Customs Enforcement ("ICE") after serving his sentence. ICE released Ramos Espina under an order of supervision 90 days later because it could not remove him to Cuba.  Since then, he has fully complied with all conditions of supervision.

On December 30, 2025, Ramos Espina reported to the ICE office in Miramar, Florida for a check-in appointment. ICE arrested him without explanation. He is currently detained at Alligator Alcatraz. Ramos Espina challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Immigration and Nationality Act ("INA").

**B. Jurisdiction**

Before addressing the merits of Ramos Espina's claim, the Court must address its jurisdiction. The respondents argue two sections of the INA strip the Court of jurisdiction over this action. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did

not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Ramos Espina does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order.  Nor does he ask the Court to review the removal order.  Rather, Ramos Espina challenges

the legality of his detention under a framework devised by the Supreme Court for district courts to apply. *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Ramos Espina's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

### C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus

an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The respondents argue Ramos Espina's petition is premature because his current detention has not exceeded 180 days. They assume the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

The respondents argue the spirit of *Zadvydas* is to prevent prolonged detention. That is not quite right. The *Zadvydas* framework explicitly guards against *indefinite* detention. 533 U.S. at 682 ("Based on our conclusion that indefinite detention of aliens…would raise serious constitutional concerns, we

construe the statute to contain an implicit 'reasonable time' limitation"). It is prospective, not retrospective. If the government can establish a significant likelihood of removal in the reasonably foreseeable future, post-removal detention—even prolonged detention—is lawful. Otherwise, the government can keep tabs on the noncitizen through reasonable conditions of supervision while it continues removal efforts. If removal becomes likely, the government can detain the noncitizen while it irons out the details.

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Ramos Espina has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE made that determination in 2008, when it failed to remove Ramos Espina to Cuba in and released him from custody. The burden thus shifts to the respondents, but they make no attempt at rebuttal.

**D. Conclusion**

The Court finds no significant likelihood Ramos Espina will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*. If removal becomes likely in the reasonably foreseeable future, DHS can detain Ramos Espina to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

Evaristo Ramos Espina Petition for Writ of Habeas Corpus (Doc. 1) is

**GRANTED**.

1. The respondents shall release Ramos Espina within 24 hours of this

   Order, and they shall facilitate his transportation from the detention

   facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and

   deadlines, enter judgment, and close this case.

   **DONE AND ORDERED** in Fort Myers, Florida on February 19, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1